**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMAS CARTER; INMAR JONY BARCO FLORIAN; CAROLINA CONTRERAS MARTINEZ; ALVIN DE JESUS JIMENEZ; HIRA FAHAD; FAHAD FAROOQ; ENQUILBERT GODINEZ; SVETLANA KARTSHIKYAN; ALI MOHAMMED; KIMIYO NAKA; SARAHI QUINTERO GONZALEZ; AMIR SHOHAM; and OFRA BAZEL-SHOHAM,  ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs,  ) ) | |
| v.  ) ) | Case No.: |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR M. JADDOU, Director of USCIS; NATIONAL ARCHIVES AND RECORDS ADMINISTRATION; DEBRA STEIDEL WALL, Acting Archivist of the United States, and UNITED STATES  OF AMERICA,  ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY RELIEF AND RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**

**INTRODUCTION**

1.      Plaintiffs each filed naturalization applications (Form N-400) with Defendant

U.S. Citizenship and Immigration Services (USCIS) in 2020 to become U.S. citizens, but they

are still waiting for the agency to schedule them for an interview. While many others who filed

their applications at a later date have already had their interviews and their oath ceremonies and

1

become U.S. citizens, the Plaintiffs wait. They wait because their immigration files remain in storage.

2.      Upon information and belief, Plaintiffs' immigration files are at a Federal Records Center storage facility. Federal Records Center storage facilities are operated by Defendant National Archives and Records Administration (NARA). Defendant USCIS chose to place immigration files for which it is responsible at a Federal Records Center and then disclaimed responsibility when the COVID-19 pandemic restricted access to the Federal Records Centers.

3.      Even after the Federal Records Centers returned to full capacity operations in March 2022, USCIS and NARA have not acted to prioritize the retrieval of immigration files and scheduling of interviews for people who have pending naturalization applications (i.e., for U.S. citizenship).

4.      Instead of proactively targeting the immigration files of naturalization applicants for retrieval so that the agency can adjudicate their naturalization applications, as recently as May 2022, Defendant USCIS has responded to some Plaintiffs' inquiries with such statements as "USCIS anticipates a delay in completing this application"—when these applications were filed in 2020. USCIS says it cannot proceed without the immigration file but the agency will not estimate, or provide a timeline, as to when the agency will retrieve the file. USCIS acknowledges that the naturalization applicants have not caused the delay yet expects the applicants to simply continue to wait.

5.      Plaintiffs and other naturalization applicants whose immigration files are stuck in a Federal Records Center are prejudiced by USCIS' delay in a manner unlike any other applicants for immigration benefits. U.S. mid-term elections are fast approaching. If Plaintiffs

are not scheduled for interviews—because their immigration files remain inaccessible—they cannot have their applications adjudicated and, when approved, take the oath of citizenship in time to vote in November 2022.

## JURISDICTION

6.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question).

7.      This Court has the authority to grant relief pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. The United States has waived sovereign immunity under 5 U.S.C. § 702.

8.      Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(C) because Plaintiffs Thomas Carter and Alvin De Jesus Jimenez reside in this district and no real property is at issue.

## PARTIES

9.      Plaintiff Thomas Carter is a U.S. lawful permanent resident who resides in Framingham, Massachusetts. He filed his naturalization application (Form N-400) with USCIS on May 21, 2020, which is the "received date" listed on the USCIS receipt notice for his application. When Plaintiff Carter inquired as to the status of his naturalization application on November 19, 2021, the USCIS reply of December 6, 2021 said that his inquiry was being forwarded to the USCIS National Benefits Center for response—but he never received a response. A February 17, 2022 inquiry resulted in a March 10, 2022 reply that the processing of his naturalization application "is delayed pending receipt of your A-file." The reply referred to USCIS storing immigration files at Federal Records Centers operated by the National Archives and Records Administration. The reply gave no timeline or estimate as to when his A-file would be received.

10.     Plaintiff Inmar Jony Barco Florian is a U.S. lawful permanent resident who resides in Herndon, Virginia. He filed his naturalization application (Form N-400) with USCIS on April 24, 2020, which is the "received date" listed on the USCIS receipt notice for his application. His attorney submitted an inquiry on his behalf on October 8, 2021, and another on January 3, 2022. In both its October 22, 2021 and January 10, 2022 replies, USCIS stated that "your case is pending the transfer of your immigration file from one of our records facilities." The replies contained no timeline or estimate as to when the immigration file (A-file) would be transferred. Plaintiff Barco Florian inquired again on March 22, 2022. USCIS replied on April 14, 2022, that the processing of his naturalization application "is delayed pending receipt of your A-file." The reply referred to USCIS storing immigration files at Federal Records Centers operated by the National Archives and Records Administration. The reply gave no timeline or estimate as to when his A-file would be received. An inquiry submitted on his behalf on April 4, 2022, also received a reply dated April 14, 2022, that "his case is currently undergoing the required security checks." This reply never mentions that the A-file would be necessary to complete security checks and USCIS did not provide a timeline for completion.

11.     Plaintiff Carolina Contreras Martinez is a U.S. lawful permanent resident who resides in Fair Oaks Ranch, Texas. She filed her naturalization application (Form N-400) with USCIS on April 14, 2020, which is the "received date" listed on the USCIS receipt notice for her application. When she inquired on October 7, 2021, about the status of her application, she received an October 19, 2021 reply that her inquiry was being forwarded to the USCIS National Benefits Center, to be "best addressed by the USCIS office processing your case." But the National Benefits Center did not reply. When she inquired again on February 8, 2022, USCIS replied on March 5, 2022 that the processing of her naturalization application "is delayed

pending receipt of your A-file." The reply referred to USCIS storing immigration files at Federal Records Centers operated by the National Archives and Records Administration. The reply gave no timeline or estimate as to when her A-file would be received.

12.    Plaintiff Alvin De Jesus Jimenez is a U.S. lawful permanent resident who resides in Lawrence, Massachusetts. He filed his naturalization application (Form N-400) with USCIS on April 6, 2020, which is the "received date" listed on the USCIS receipt notice for his application. On September 15, 2021, his attorney submitted an inquiry to USCIS about the status of his long-pending naturalization application. On September 22, 2021, a USCIS Community Relations Officer in Boston, Massachusetts, responded that his file was stored at a Federal Records Center operated by NARA, and that USCIS could not move forward until the file was received. The attorney submitted another status request as to Plaintiff De Jesus Jimenez's application on February 16, 2022, to which USCIS did not respond until May 16, 2022. USCIS replied that it "anticipates a delay in completing your case." USCIS added only that his "case is proceeding correctly and will be scheduled for interview as soon as possible"—with no estimate or timeline.

13.    Plaintiff Hira Fahad is a U.S. lawful permanent resident who resides in Niskayuna, New York. She filed her naturalization application (Form N-400) with USCIS on March 29, 2020, which is the "received date" listed on the USCIS receipt notice for her application.  Plaintiff Fahad requested assistance from the office of Senator Kirsten Gillibrand (D.-NY). The Senator's office responded on January 28, 2022, by transmitting a reply that their office received from USCIS. In USCIS' response, the agency said Plaintiff Fahad's "N-400 is still currently at the USCIS National Records Center (NRC)"—although a naturalization application ordinarily would not be in storage (as contrasted with the applicant's A-file). USCIS

then stated: "Typically, archived files which are not in the custody of the NRC must be requested through NARA." USCIS said that due to COVID-19, "NARA has suspended or closed its storage facilities." USCIS also acknowledged that it was "unable to render a decision" on Plaintiff Fahad's application until the agency could access and review the stored information. USCIS provided no timeline or estimate as to when the information would be retrieved.

14.    Plaintiff Fahad Farooq is a U.S. lawful permanent resident who resides in Niskayuna, New York, and is the spouse of Hira Fahad. He filed his naturalization application (Form N-400) with USCIS on March 22, 2020, which is the "received date" listed on the USCIS receipt notice for his application. Plaintiff Farooq requested assistance from the office of Senator Kirsten Gillibrand (D.-NY). The Senator's office responded on February 14, 2022, by transmitting a reply from USCIS that resembled the agency's reply when the Senator's office inquired for Plaintiff Fahad. In USCIS' response, the agency said Plaintiff Farooq's "N-400 is currently at the USCIS National Records Center (NRC)." USCIS then stated: "Typically, archived files which are not in the custody of the NRC must be requested through NARA." USCIS said that due to COVID-19, "NARA has suspended or closed its storage facilities." USCIS also acknowledged that it was "unable to render a decision" on Plaintiff Farooq's application until the agency could access and review the stored information. USCIS provided no timeline or estimate as to when the information would be retrieved.

15.    Plaintiff Enquilbert Godinez is a U.S. lawful permanent resident who resides in Clearwater, Florida. He filed his naturalization application (Form N-400) with USCIS on May 7, 2020, which is the "received date" listed on the USCIS receipt notice for his application. On January 3, 2022, Plaintiff Godinez received a response from USCIS that the office of Representative Charlie Crist (D.-Fl.) had obtained for, and forwarded to him, as to the status of

his application. USCIS stated: "Due to workload factors not related to the applicant's case, USCIS anticipates a delay in completing this application. We are currently awaiting the applicant's physical immigration file in order to complete the pre-processing of this case." USCIS said that once it received the file, Plaintiff Godinez's application would be placed "in the interview queue for the Tampa Field Office" and when scheduled, the USCIS National Benefits Center would send an interview notice and forward the file to the field office. USCIS did not provide an estimate or timeline as to when the file would be received.

16.    Plaintiff Svetlana Kartshikyan is a U.S. lawful permanent resident who resides in Burbank, California. She filed her naturalization application (Form N-400) with USCIS on April 29, 2020, which is the "received date" listed on the USCIS receipt notice for her application. In December 2021, she contacted the office of Representative Adam Schiff (D.-Cal.) for assistance. By letter dated January 31, 2022, the Congressman's office forwarded a response from USCIS that the agency could not make a decision on Plaintiff Kartshikyan's application until it is "able to access and review information currently unavailable to us due to its storage at the NARA." USCIS did not provide an estimate or timeline as to when the information would be retrieved. On April 27, 2022, the office of the Citizenship and Immigration Service Ombudsman (which is not part of USCIS) responded to a February 2022 inquiry about USCIS' delay in processing Plaintiff Kartshikyan's application. The Ombudsman's office replied that its "review indicates that [USCIS] must receive a related file in order to resume processing" her application. The Ombudsman's office said USCIS was "experiencing serious delays in file transfers due in part to measures taken to ensure employee safety during the COVID-19 pandemic." Yet this was after the Federal Records Centers, where the A-files of naturalization applicants were stored, had

reopened. The Ombudsman's office said "there is currently no estimated time frame" for USCIS to receive Plaintiff Kartshikyan's file.

17.    Plaintiff Ali Mohammed is a U.S. lawful permanent resident who resides in Miami Beach, Florida. He filed his naturalization application (Form N-400) with USCIS on April 8, 2020, which is the "received date" listed on the USCIS receipt notice for his application. He requested assistance from the office of Representative Gerald Connolly (D-Va.). On January 6, 2022, the Congressman's office forwarded to him a USCIS response to the office's December 5, 2021 inquiry. USCICS stated that the case was under "extended review" and USCIS could not decide "until certain issues are resolved." Yet, when Plaintiff Mohammed inquired directly to USCIS on February 28, 2022, USCIS replied on March 17, 2022 that the processing of his naturalization application "is delayed pending receipt of your A-file." The reply referred to USCIS storing immigration files at Federal Records Centers operated by the National Archives and Records Administration. The reply gave no timeline or estimate as to when his A-file would be received.

18.    Plaintiff Kimiyo Naka is a U.S. lawful permanent resident who resides in Chicago, Illinois. She filed her naturalization application (Form N-400) with USCIS on April 13, 2020, which is the "received date" listed on the USCIS receipt notice for her application. She requested assistance from the office of Senator Richard Durbin (D.-Ill.). On February 14, 2022, the Senator's office forwarded to her a February 11 reply received from the USCIS National Benefits Center: "Due to workload factors not related to the applicant's case, USCIS anticipates a delay in completing this application.  A review of our systems shows we are currently awaiting the applicant's physical file in order to complete the pre-processing of this case." The reply continued that once the USCIS National Benefits Center received the file, Plaintiff Naka's

8

application would be placed "in the interview queue" for an unnamed field office and when scheduled, the NBC would send an interview notice and forward the file to the field office. USCIS did not provide an estimate or timeline as to when the file would be received. On March 7, 2022, USCIS replied to an October 7, 2021 inquiry submitted on Plaintiff Naka's behalf. USCIS repeated that it "anticipates a delay in completing your case." USCIS added only that her "case is proceeding correctly and will be scheduled for interview as soon as possible"—with no estimate or timeline.

19.     Plaintiff Sarahi Quintero Gonzalez is a U.S. lawful permanent resident who resides in Columbia Heights, Minnesota. She filed her naturalization application (Form N-400) with USCIS on April 20, 2020, which is the "received date" listed on the USCIS receipt notice for her application. On February 14, 2022, USCIS replied to an inquiry her attorney submitted that day on Plaintiff Quintero Gonzalez's behalf. USCIS said the agency's records "indicate your immigration (A-file) is located within the [NARA] federal records centers" and that until staffing levels increase at the federal records centers, USCIS could not provide a timeline for file receipt. On March 21, 2022, the office of the Citizenship and Immigration Service Ombudsman responded to a December 2021 inquiry on Plaintiff Quintero Gonzalez's behalf. The Ombudsman's office replied that its "review indicates that [USCIS] must receive a related file in order to resume processing" Plaintiff Quintero Gonzalez's application. The Ombudsman's office said USCIS was "experiencing serious delays in file transfers due in part to measures taken to ensure employee safety during the COVID-19 pandemic." Yet this was after the Federal Records Centers had reopened. The Ombudsman's office said "there is currently no estimated time frame" for USCIS to receive Plaintiff Quintero Gonzalez's file.

20.     Plaintiff Amir Shoham is a U.S. lawful permanent resident who resides in Jenkintown, Pennsylvania. He filed his naturalization application (Form N-400) with USCIS on May 11, 2020, which is the "received date" listed on the USCIS receipt notice for his application. Assistance was requested on Plaintiff Shoham's behalf from the office of Senator Pat Toomey (R-Pa.). On December 16, 2021, and on March 10, 2022, Senator Toomey's office forwarded the same response from USCIS. The response stated that the agency was "awaiting the primary A-file[]" from the federal records center and was "unable to move forward" with interview scheduling "without the primary A-file."

21.     Plaintiff Ofra Bazel-Shoham is a U.S. lawful permanent resident, and the wife of Plaintiff Amir Shoham, who resides in Jenkintown, Pennsylvania. She filed her naturalization application (Form N-400) with USCIS on May 11, 2020, which is the "received date" listed on the USCIS receipt notice for her application. Assistance was requested on Plaintiff Bazel-Shoham's behalf from the office of Senator Pat Toomey (R-Pa.). On December 16, 2021, and on March 10, 2022, Senator Toomey's office forwarded the same response from USCIS. The agency was "awaiting the primary A-file[]" from the Federal Records Center and was "unable to move forward" with interview scheduling "without the primary A-file."

22.     Defendant USCIS is a component of the U.S. Department of Homeland Security, 6 U.S.C. § 271, and an agency within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for adjudicating immigration benefits, including applications for naturalization.

23.     Defendant Ur M. Jaddou is the Director of USCIS. As Director, she is responsible for overseeing, and has ultimate responsibility for, the timely adjudication of immigration benefits and establishing and implementing governing policies. She is sued in her official capacity.

24.     Defendant NARA is an agency within the meaning of the APA, 5 U.S.C.

§ 551(1). NARA preserves and maintains the federal government's document collection. NARA

operates the Federal Records Centers, which provide records storage for other federal agencies,

described as "federal agency customers."

25.     Defendant Debra Steidel Wall is the Acting Archivist of the United States. The

Archivist of the United States is the head of NARA. NARA preserves and maintains the federal

government's document collection. NARA operates the Federal Records Centers, which provide

records storage for other federal agencies, described as "federal agency customers." As the

official acting for the Archivist, Defendant Wall is responsible for overseeing, and has ultimate

responsibility for, establishing and implementing policies and procedures for records storage and

retrieval. She is sued in her official capacity.

26.     Defendant United States of America is responsible for the issuance of

naturalization, and exercises authority to adjudicate and approve applications for naturalization,

including the applications filed by Plaintiffs. Defendant United States of America is sued

pursuant to 5 U.S.C. §703.

## <u>JOINDER OF PARTIES</u>

27.     The parties are properly joined under Federal Rule of Civil Procedure 20(a)(1)(B).

They share common questions of fact: each applicant filed their naturalization application more

than two years ago, and USCIS has delayed adjudication because their file has been in a storage facility

and could not be accessed. The parties also share a common question of law: whether such delays

are unreasonable under the Administrative Procedure Act, 5 U.S.C. § 706(1).

## FACTUAL AND LEGAL BACKGROUND

28.     With some exceptions, a lawful permanent resident who is at least 18 years old

becomes eligible to apply for U.S. citizenship in the following timeframes. One timeframe is

continuous residence in the United States for at least five years since becoming a lawful

permanent resident and physical presence for at least half of the five years immediately prior to

filing a naturalization application, 8 U.S.C. § 1427(a)(1). The other timeframe is, if based on

marriage to a U.S. citizen, continuous residence in the United States for at least three years since

becoming a lawful permanent resident and physical presence for at least half of the three years

immediately prior to filing a naturalization application. 8 U.S.C. § 1430(a).

29.     After noncitizens become lawful permanent residents, USCIS usually will not

have an immediate need for their individual immigration files, because most lawful permanent

residents will have to wait at least three years before becoming eligible to apply for U.S.

citizenship.

30.     An individual immigration file (also known as an "Alien file" or "A-file")

includes that person's immigration history, such as applications and petitions for immigration

benefits, investigative reports, correspondence, and memoranda.

31.     Defendant USCIS has its own records storage center, the National Records

Center. USCIS contracted with Defendant NARA to store A-files, including the A-files of lawful

permanent residents which USCIS did not have an immediate need to retrieve, at Federal

Records Centers.

32.     Congress authorized Defendant NARA to establish, maintain, and operate records

centers for federal agencies. 44 U.S.C. § 2907.

33.     Plaintiffs' naturalization applications are processed at the USCIS National Benefits Center before transfer to USCIS Field Offices. Defendant USCIS interviews naturalization applicants and adjudicates their applications at the USCIS Field Office that has jurisdiction over their residence address. Occasionally, USCIS may temporarily assign another USCIS Field Office to conduct interviews because of workload considerations.

34.     After the National Benefits Center determines that a naturalization application is ready for interview, it places the application in a queue for the USCIS Field Office that is designated to conduct the interview. When a USCIS Field Office has appointments available for naturalization applicants, the Field Office notifies the National Benefits Center. The National Benefits Center selects from the queue of interview-ready naturalization applications to fill the appointments identified by the Field Office and sends the interview notices for the Field Office to the naturalization applicants in the interview queue for that Field Office.

35.     As part of its processing, the National Benefits Center must receive a naturalization applicant's A-file. The National Benefits Center does not place a naturalization application into a Field Office interview queue until the A-file is available. A USCIS adjudicator must review a naturalization applicant's A-file before deciding whether to approve the naturalization application and schedule the applicant for an oath ceremony. *See* 8 C.F.R. § 335.1.

36.     In March 2020, the Federal Records Centers, where USCIS had stored A-files, closed due to the COVID-19 pandemic. By February 2022, these Federal Records Centers had resumed operations at partial capacity. As of March 15, 2022, these Federal Records Centers had removed their capacity limits. As of the date of filing of this complaint, these Federal Records Centers have completed the recall of their staff and there are no longer capacity limits. *FRC*

*Operating Status*, National Archives, https://www.archives.gov/frc/operating-status (last modified on May 3, 2022).

37.     Since the Federal Records Centers returned to full capacity operations, NARA has been retrieving A-files, and USCIS has provided personnel to assist with the retrieval. However, to Plaintiffs' knowledge, NARA and USCIS do not have a plan to prioritize the retrieval from the Federal Records Centers, and transfer to the USCIS National Benefits Center, the A-files of naturalization applicants. USCIS also does not have a plan to prioritize the scheduling of interviews for naturalization applicants whose A-files are retrieved from the Federal Records Centers.

38.     Defendants had roughly two years to develop and implement a plan to identify the A-files of naturalization applications for priority for retrieval when the Federal Records Centers reopened and deliver the A-files promptly from the Federal Records Centers to the National Benefits Center. Defendant Jaddou and her predecessors had roughly two years to develop and implement a plan to prioritize the completion of National Benefits Center processing and the National Benefits Center's placement into the interview queue of the naturalization applications the National Benefits Center did not process because their A-files are in the Federal Records Centers.

39.     Rather than making a plan to remove the processing delays, as recently as May 2022, Defendant USCIS has responded to Plaintiffs' inquiries that the agency "anticipates a delay in completing" their naturalization applications. USCIS provides no timeline for when their A-files will be retrieved from storage and their interviews scheduled.

40.    Plaintiffs are facing a loss from the continued delay in retrieving their A-files that other applicants for immigration benefits will not—the right to vote in the upcoming November 2022 elections.

41.    Defendant USCIS has a duty to conduct an interview of a naturalization applicant. "The [Secretary of the Department of Homeland Security] shall designate employees of [USCIS] to conduct examinations upon naturalization applications." 8 U.S.C. § 1446(b). "The employee designated to conduct any such examination shall make a determination as to whether an application shall be granted or denied." 8 U.S.C. § 1446(d).

## TRAC FACTORS AND UNREASONABLE DELAY

42.    Courts often evaluate whether an agency's delay is unreasonable by applying the six factors identified by the D.C. Circuit in *Telecomms. Rsch. & Action Ctr. v. FCC* ("TRAC"):

> (1) the time agencies take to make decisions must be governed by a 'rule of reason'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (citations omitted). *See Towns of Wellesley, Concord & Norwood, Mass. v. Fed. Energy Regul. Comm'n*, 829 F.2d 275, 277 (1st Cir. 1987) (per curiam) (citing *TRAC* guidelines as relevant to determining whether agency delay is unreasonable).

**_TRAC_ Factors 1 and 2: "Rule of Reason" and a Statutory Benchmark**

43.     USCIS has a policy of encouraging naturalization. USCIS has a "Citizenship

Resource Center" on its website which is managed by its Office of Citizenship. USCIS,

*Citizenship Resource Center*, https://www.uscis.gov/citizenship (last visited May 24, 2022).

44.     Congress established the position of Chief of the  Office of Citizenship in § 451(f)

of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2197 (Nov. 25,

2002). The USCIS Office of Citizenship's mission "is to provide federal leadership, tools, and

resources to proactively foster civic integration." USCIS, *Office of Citizenship*,

https://www.uscis.gov/about-us/organization/directorates-and-program-offices/external-affairs-

directorate/office-of-citizenship (Feb. 17, 2021). The Office of Citizenship's work includes

"[p]roviding immigrants with opportunities and tools to become vested citizens" and to "raise

awareness" of the importance of civic integration to society. *Id.*

45.     In addition, the Biden-Harris administration issued an Executive Order in the first

weeks of their administration, directing government agencies to take a number of actions to

promote naturalization and improve naturalization processing. *See* Exec. Order No. 14,012,

Restoring Faith in Our Legal Immigration Systems and Strengthening Integration and Inclusion

Efforts for New Americans (Feb. 2, 2021), *available at* https://www.whitehouse.gov/briefing-

room/presidential-actions/2021/02/02/executive-order-restoring-faith-in-our-legal-immigration-

systems-and-strengthening-integration-and-inclusion-efforts-for-new-americans/.

46.     The Administration directed the creation of an interagency naturalization working

group with a particular focus on "eliminat[ing] barriers in and otherwise improv[ing] the existing

naturalization process, including by conducting a comprehensive review of that process with

particular emphasis on the N-400 application, fingerprinting, background and security checks,

interviews, civics and English language tests, and the oath of allegiance." *Id.* Notably, the naturalization process was the only immigration application or petition type specifically mentioned in the Executive Order, evincing the Administration's prioritization of naturalization applicants.

47.    The Application for Naturalization, Form N-400, is one of only thirteen forms that USCIS has digitized for electronic filing.

48.    Many USCIS Field Offices offer administrative naturalization so that applicants who receive approval can become U.S. citizens the same day that they attend their interview.

49.    Congress has expressed its expectation that USCIS adjudicate a naturalization application within 180 days. "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b).

### *TRAC* **Factors 3 and 5: Prejudice and Harm to Health and Welfare Due to Delay**

50.    Defendants' delay in retrieving Plaintiffs' A-files, with no timeline provided, leaves them in a stress-filled limbo. Until they are interviewed, they cannot move forward with the naturalization process. Serious issues about the future of the United States, as to immigration, family, education, the economy will be determined by who is elected at the national, state, and local levels. If Plaintiffs' A-files are not retrieved, then their interviews cannot be scheduled, and they will have no possibility of being scheduled for oath ceremonies and becoming U.S. citizens in time to vote in November 2022.

51.    As permanent residents, they are subject to different treatment than U.S. citizens under U.S. tax and criminal laws, when they return to the United States after traveling abroad and are ineligible for certain types of U.S. employment.

52.     Plaintiff Thomas Carter is fearful that he and his husband could be separated if they do not share the same citizenship. He is anxious to participate in the electoral process, to be able to put down roots, feel part of society, and share life in the United States with his U.S. citizen husband and their infant child. He experiences anxiety when he travels abroad, such as when he traveled abroad to attend his grandmother's funeral in October 2021, and upon his return had to process through U.S. immigration as a lawful permanent resident rather than a U.S. citizen.

53.     Plaintiffs Inmar Jony Barco Florian, Carolina Contreras Martinez, Alvin De Jesus Jimenez, Svetlana Kartshikyan, Ali Mohammed, and Sarahi Quintero Gonzalez are anxious about whether the continuing delay in retrieving their A-files will mean that their interviews will be scheduled too late for them to be able to become U.S. citizens and vote in the November 2022 election. Plaintiff Contreras Martinez and her husband applied for naturalization together and he is already a U.S. citizen while she is still waiting for her A-file to be retrieved.

54.     Plaintiff Fahad Farooq is a physician. He has been experiencing stress from being "in limbo"—the uncertainty of not knowing how long it will be until his A-file can be retrieved and his interview scheduled. He has postponed international travel because of the difficulty of obtaining a visa to enter certain countries as a U.S. lawful permanent resident when these countries do not require a visa for U.S. citizens. Plaintiff Farooq has friends who he believes filed their naturalization applications a few months after he filed his application and they became U.S. citizens in less than a year. Plaintiff Fahad Farooq and his wife Hira Fahad are anxious about whether the continuing delay in retrieving their A-files will mean that their interviews will be scheduled too late for them to be able to become a U.S. citizen and vote in the November 2022 election.

55.     Plaintiff Enquilbert Godinez is a foreman for a company that installs and maintains air conditioning systems. He is anxious about whether the continuing delay in retrieving his A-file will mean that his interview will be scheduled too late for him to be able to become a U.S. citizen and vote in the November 2022 election. Plaintiff Godinez's father, who lives in the Philippines, is his only surviving parent. As a U.S. citizen, Plaintiff Godinez would be able to sponsor his father for permanent residence. Plaintiff Godinez is anxious about the continued delay because his father is close to 80 years old.

56.     Plaintiff Kimiyo Naka is the President and founder of a Chicago-based boutique public relations agency, KCommunications, LLC. Ms. Naka is the Chair of the Osaka Committee of Chicago Sister Cities International, and in Fall 2021 she was recognized for her civic activism by her selection as the 2021 Chicago Sister Cities International Volunteer of the Year. She is anxious about whether the continuing delay in retrieving her A-file will mean that her interview will be scheduled too late for her to be able to become a U.S. citizen and vote in the November 2022 election. She also has been worried about the uncertainties of traveling abroad and then processing in the United States as a lawful permanent resident and has not visited her elderly parents in Japan.

57.     Plaintiffs Amir Shoham and Ofra Bazel-Shoham are professors who had offers to teach in several countries other than the United States. They selected the United States because they thought this country offered better security, and freedom from bureaucratic interference in their lives and the lives of their now four children, two of whom are not U.S. citizens. Plaintiff Amir Shoham's father and grandfather came from totalitarian regimes and he is particularly concerned that citizens have more protections than lawful permanent residents when laws change. Plaintiffs Shoham and Bazel-Shoham are anxious about whether the continuing delay in

19

retrieving their A-files will mean that their interviews will be scheduled too late for them to be able to become U.S. citizens and vote in the November 2022 election. They both want the deeper ties to their community, beyond their jobs and paying taxes, that U.S. citizenship brings. Plaintiff Ofra Bazel-Shoham already volunteers in the community but feels constrained by her current status.

### *TRAC* Factor 4: Competing Priorities

58.     As discussed in Paragraph 46, the Biden-Harris administration issued an Executive Order in the first weeks of their administration, discussing and prioritizing naturalization. *See* Exec. Order No. 14,012, *supra.* Notably, the naturalization process was the only immigration application or petition type specifically mentioned in the Executive Order, evincing the Administration's prioritization of naturalization applicants.

59.     Defendant USCIS also considers naturalization a priority, as evidenced by the public statements of Defendant Jaddou. In an October 2021 speech at the 2021 National Immigrant Integration Conference, Director Jaddou said:

> At the heart of this effort [to work towards restoring trust and confidence in USCIS and the naturalization process] is a whole of government approach to do just that: Break down barriers to the naturalization process through policy changes and operational means; and Promote naturalization and the importance of U.S. citizenship through outreach and promotion, understanding that our goal is to strengthen integration for new Americans.
>
> USCIS is driving this effort through policy and operational changes that we are making internally but also in partnership with 11 federal agencies who are member[s] of an interagency Naturalization Working Group that USCIS chairs. Together, we developed a strategy for promoting naturalization and integration for new Americans that was released by the White House in July. This working group is building capacity for new and expanded partnerships, and implementing a robust public engagement strategy with federal, state, and local partners, community-based organizations, networks, and businesses.

Remarks Delivered by Director Ur M. Jaddou, *available at*

https://www.uscis.gov/newsroom/speeches-statements-testimony/remarks-delivered-by-director-

ur-m-jaddou-at-the-2021-national-immigrant-integration-conference. Director Jaddou also stated

that USCIS is committed to ensuring an accessible naturalization process, recognizing "that

accessibility inherently includes affordability" and that applicants understand the "many

benefits" of U.S. citizenship. "We know that naturalization allows applicants and their family

members to more fully participate in life as citizens of this great country, empowered with the

many rights and responsibilities that the title 'citizen' confers."

60.     Other evidence that Defendant USCIS considers naturalization a priority include

the congressionally mandated Office of Citizenship, and efforts such as electronic filing and

administrative naturalization to increase processing.

61.     Placing Plaintiffs' naturalization applications into the Field Office interview

queue based on the received date for their applications treats them equitably with other

naturalization applicants. Naturalization applicants with later received dates should not be

scheduled ahead of Plaintiffs just because the National Benefits Center was not waiting for their

A-files to be transferred from a Federal Records Center.

62.     Defendants' delay in retrieving Plaintiffs' A-files from Federal Records Center

storage after these facilities reopened is unreasonable; unreasonableness does not have to be the

result of bad faith or other impropriety.

## COUNT ONE

### Administrative Procedure Act—5 U.S.C. § 706(1)

### Administrative Procedure Act Violation by Unreasonably Delaying Adjudication of Plaintiffs' Naturalization Applications

63.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, the

allegations above.

64.     The APA provides for judicial review when a person is adversely affected by agency action. 5 U.S.C. § 702. Agency action includes an agency's failure to act. 5 U.S.C. § 551(13). A court "shall compel agency action . . . unreasonably delayed." 5 U.S.C. § 706(1).

65.     Scheduling Plaintiffs for an interview regarding their naturalization applications and deciding whether to approve or deny the applications are discrete actions that USCIS is required to take within a reasonable time.

66.     Defendants' failure to take the following actions constitutes an unreasonable delay: (1) Develop and implement a plan to prioritize the retrieval of Plaintiffs' and other naturalization applicants' A-files from the Federal Records Centers when they reopened and promptly transfer the A-files to the National Benefits Center; and (2) Develop and implement a plan to prioritize the completion of National Benefits Center processing and the National Benefits Center's placement into the interview queue of the naturalization applications of Plaintiffs and other applicants after the National Benefits Center receives the A-files.

67.     There are no available remedies for Plaintiffs to exhaust.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs request that this Court grant the following relief:

(1)     Assume jurisdiction over this matter;

(2)     Declare that Defendants have violated the Administrative Procedure Act by unreasonably delaying the adjudication of Plaintiffs' naturalization applications;

(3)     Compel Defendants to retrieve Plaintiffs' A-files from Federal Records Center storage and transfer their A-files to the USCIS National Benefits Center no later than 20 days after the Court enters its order;

(4)     Compel Defendant Jaddou to require the USCIS National Benefits Center to complete the processing of Plaintiffs' naturalization applications and place Plaintiffs' naturalization applications into the interview queue for the UCSIS Field Office responsible for interviewing and deciding a particular Plaintiff's naturalization application no later than 15 days after the National Benefits Center receives Plaintiffs' A-files from Federal Records Center storage;

(5)     Compel Defendant Jaddou to require the USCIS National Benefits Center to place Plaintiffs' naturalization applications in the interview queue for the USCIS Field Office based on the received date of Plaintiffs' naturalization application, and not based on the date their naturalization applications are placed in the interview queue, if USCIS does not currently order the interview queue based on the received date;

(6)     Award Plaintiffs' counsel reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

(7)     Grant such other and further relief as the Court deems just, equitable, and appropriate.

DATE: May 25, 2022                          Respectfully submitted,

/s/ Emma Winger
Emma Winger (BBO #677608)
Leslie K. Dellon (DC 250316)*
Katherine Melloy Goettel (IA 23821)*
American Immigration Council
1331 G St. NW, Suite 200
Washington, DC 20005
Tel: 202-507-7512 (Winger)
202-507-7530 (Dellon)
202-507-7552 (Goettel)
Email: ewinger@immcouncil.org
ldellon@immcouncil.org
kgoettel@immcouncil.org

Adam Boyd (WA 49849)*
Emily Simcock (WA 55635)*
Gibbs Houston Pauw
1000 2d Ave. #1600
Seattle, WA 98104
Tel: 206-708-8744[ (Boyd)
Tel: 206-708-8743 (Simcock)
Email: adam.boyd@ghp-law.net_ (Boyd)
Emily.Simcock@ghp-law.net (Simcock)

Attorneys for Plaintiffs

*Motions for Admission
 Pro Hac Vice Forthcoming